UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**NICOLE KRAUS**, individually, and on
behalf of others similarly situated,                    Case No.

       Plaintiff,

vs.

**CARDWORKS SERVICING, L.L.C.**,
a Delaware limited liability company,
and **CARDWORKS SERVICES.,
L.L.C.**, a Delaware limited liability
corporation,

       Defendants.

---

## COMPLAINT – CLASS/COLLECTIVE ACTION

Plaintiff, Nicole Kraus, individually and on behalf of all others similarly situated, by and
through her attorneys, hereby brings this Collective/Class Action Complaint against Defendants,
CardWorks Servicing, LLC and CardWorks Services, LLC, and states as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and
Fed. R. Civ. P. 23 by Plaintiff Nicole Kraus (hereinafter collectively referred to as "Plaintiff"),
individually and on behalf of all similarly situated persons employed by Defendants CardWorks
Servicing, LLC and CardWorks Services, LLC (hereinafter collectively referred to as
"Defendants"), arising from Defendants' willful violations of the Fair Labor Standards Act
("FLSA"), 29 U.S.C. § 201, *et seq.* and the Pennsylvania Minimum Wage Act ("PMWA"), 43
P.S. § 333.104, *et seq.*

2.      According to Defendants website, Defendants are a "consumer financing service

provider, and people-centric, compliance focused organization enabled by data and technology. [Defendants'] mission is to delight our clients and customers by providing customized and compliant servicing solutions."   *See*, https://www.cardworks.com/ (last visited 7/15/20).

3.      In order to provide their clients and customers with these financing services, Defendants employ hourly (non-exempt) customer service representatives (hereinafter referred to as "CSRs") in a number of call center centers across the country, including, but not limited to, call centers in: Pittsburgh, Pennsylvania; Orlando, Florida; Lake Mary, Florida; and Woodbury, New York (where Defendants' Headquarters are located).

4.      Plaintiff and the putative class members were employed by Defendants as CSRs within the past three years.

5.      Defendants' CSRs are all hourly, non-exempt employees.

6.      Defendants require their CSRs to work a set schedule. However, Defendants do not begin compensating CSRs until they have started up their computers and logged into all of the necessary computer applications. This policy results in CSRs not being paid for all time worked and for all of their overtime compensation in violation of the FLSA, the PMWA, and common law.

7.      Defendants' CSRs use multiple computer programs, software programs, servers, and applications in the course of performing their responsibilities at Defendants' call centers. These programs, servers, and applications are an integral and important part of their work as they cannot perform their job without them.

8.      Defendants' CSRs perform the same basic job duties and are required to use the same computer programs, software programs, servers, and applications, regardless of which call center they are employed at.

2

9. The U.S. Department of Labor recognizes that call center jobs, like those held by Defendants' CSRs, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." Fact Sheet #64 at p. 2.

10. In order to perform their jobs, Plaintiff and all other CSRs were required to start-up and log-in to various computer programs, software programs, servers, and applications in order to access information and software. The start-up/log-in process took substantial time on a daily basis with said time ranging from 15 to 21 minutes per day, but extending even longer on days when Plaintiff and other CSRs experienced technical issues related to Defendants' computers, software or programs.

11. Plaintiff and the other CSRs were not actually "clocked in" for their shifts until *after* the computer start-up/log-in process was complete and they logged into the applicable programs, software, servers, and applications, meaning that Plaintiff and other CSRs worked at least 15 to 21 minutes each per shift that they were never compensated for. This off-the-clock time Defendants' CSRs spent starting up and logging into each session directly benefitted Defendants and this process was an essential part of their job responsibilities as CSRs.

12. Defendants provide their CSRs with one unpaid 30-minute lunch break per shift. Defendants' require CSRs to clock-in and out of the time keeping system for all lunch breaks.

13. Defendants, however, require their CSRs to perform off-the-clock, unpaid, work functions during the unpaid lunch breaks including, but not limited to: logging into and out of Defendants' computer programs, software programs, servers, and applications. On an average

shift, Plaintiff and the CSRs perform 7 to 9 minutes of off-the-clock, unpaid, work during their lunch breaks.

14.     At the end of each shift, Plaintiff and all other CSRs were required to log-out of Defendants' computer programs, software programs, servers, and applications. The log-out process took substantial time on a daily basis with said time ranging from 2 to 3 minutes per day.

15.     Defendants required Plaintiff and all other CSRs to "clock out" *prior* to logging out of the computer programs, software programs, servers, and applications, meaning that Plaintiff and other CSRs worked at least 2 to 3 minutes each per shift that they were never compensated for.  This off-the-clock time that Defendants' CSRs spent logging out of each session directly benefitted Defendants and this process was an essential part of their job responsibilities as customer sales representatives.

16.     Between the pre-shift start-up/log-in process, the post-shift log-out process, and the log-in/off during lunch period time, Defendants failed to pay Plaintiff and the other CSRs an amount equal to at least 24 to 33 minutes of compensable time per shift. Additionally, Defendants failed to compensate Plaintiff and other CSRs for off-the-clock time spent performing work duties during their lunch breaks.

17.     The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities:   "An example of the first principal activity of the day for agents/ specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

18.     Defendants knew or could have easily determined how long it took for the CSRs to complete the pre-shift start-up/log-in process, the post-shift computer log-out process, and the lunch break work duties, and Defendants could have properly compensated Plaintiff and other CSRs for the work that they performed, but did not.

19.     Plaintiff brings this action on behalf of themselves and all other similarly situated hourly CSRs who worked for Defendants to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

20.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

21.     Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

22.     Defendants' annual sales exceed $500,000 and Defendants have more than two employees, so the FLSA applies in this case on an enterprise basis.   Defendants' CSRs engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

23.     This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because it arises under the same facts as her federal claims.

24.     This court has personal jurisdiction over Defendants because they do business within New York, are registered with the New York Secretary of State, and are headquartered within this judicial district (Woodbury, New York).

25.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants employ CSRs in this district, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this district.

## PARTIES

26.     Plaintiff, Nicole Kraus, is a resident of Allison Park, Pennsylvania, and was employed by Defendants as an hourly CSR at Defendants' Call Center in Pittsburgh, Pennsylvania from approximately September 2013 to March 2019. Plaintiff signed a consent form to join this lawsuit, which is attached hereto as ***Exhibit A***.

27.     Defendant CardWorks Servicing, LLC is registered to do business in New York (DOS ID #2407443), incorporated in Delaware, with a service of process address of CT Corporation System, 28 Liberty St., New York, New York 10005.  Upon information and belief, Defendant CardWorks Servicing, LLC is headquartered in Woodbury, New York.

28.     Upon information and belief, CardWorks Services, LLC is no longer active, but was the former name of Defendant CardWorks Servicing, LLC.

## GENERAL ALLEGATIONS

29.     Defendants operate and have operated a "call center" in Pittsburg, Pennsylvania, where telephone-dedicated employees similar to the Plaintiff handle phone calls regarding services offered by Defendants to its clients.

30.     Defendants provide supervision, management, and direction to the CSR employees located at their call centers.

31.     Defendants' website claims they "want every account holder to have the best possible experience. CardWorks provides great customer service to consumers and we're there whenever   they   have   questions   or   need   help   resolving   issues."      *See*,

https://www.cardworksservicing.com/careers/ (last visited 7/15/20).

32.     Defendants' website also indicates that they currently employ 1,500 associates across four (4) locations.  *Id*.   Upon information and belief, those locations are: Pittsburgh, Pennsylvania; Orlando, Florida; Lake Mary, Florida; and Woodbury, New York.

33.     Defendants are "the largest privately held credit card servicer in the country. Delivering an outstanding customer experience is [their] number one priority."   *See*, https://www.cardworksservicing.com/call-center-opportunities (last visited 7/15/20).

34.     Although Defendant has varying titles for CSRs (e.g. Associate I, Associate II or Specialist I, Specialist II), they all have essentially the same job duties, responsibilities, method of compensation (hourly), utilize the same or similar computer programs, and use the same timekeeping system while carrying out their day to day activities.

35.     Plaintiff typically worked eight hour shifts (with a 30 minute unpaid meal period). During her employment, Plaintiff Kraus earned $19.00 to $22.00 per hour, plus commissions and shift differentials.

36.     Defendants violated the FLSA, *see*, *e.g.*, 29 U.S.C. § 207(e), 29 C.F.R. § 778.211, and the PMWA, *see*, *e.g.*, 43 P.S. § 333.104(c), 34 Pa. Code §§ 231.41, 231.42, 231.43.

37.     Throughout her employment with Defendants, Plaintiff regularly worked off-the-clock as part of her job as a CSR.

38.     In order to perform their job duties, Plaintiff and all other CSRs were required to start-up and log-in to various, computer programs, software programs, servers, and applications in order to access information and software. The start-up/log-in process took substantial time on a daily basis with said time ranging from 15 to 21 minutes per day, but extending even longer on days when Plaintiff and the other CSRs experienced technical issues related to Defendants'

computers, software, or programs.

39.     Plaintiff and all other CSRs were not actually "clocked in" for their shifts until *after* the computer start-up/log-in process was complete and they logged into the applicable programs, software, servers, and applications, meaning that Plaintiff and other CSRs worked at least 15 to 21 minutes each per shift that they were never compensated for. This off-the-clock time Defendants' CSRs spent starting up and logging into each session directly benefitted Defendants and this process was an essential part of their job responsibilities as CSRs.

40.     Defendants provide their CSRs with one unpaid 30-minute lunch break per shift.

41.     Defendants, however, require their CSRs to perform off-the-clock, unpaid, work functions during the unpaid lunch breaks including, but not limited to: logging into and out of Defendants' computer programs, software programs, servers, and applications.

42.     Some of the essential computer programs CSRs used to perform their job duties had an auto-log out feature that automatically logged the CSRs out if they were idle for too long. For example, the "Evolve" system times out and logs the CSRs out automatically if they remained idle for more than 20 minutes.   Consequently, the CSRs were forced to reboot Evolve after they returned from every lunch.

43.     On an average shift, Plaintiff and all other CSRs perform 7 to 9 minutes of off-the-clock, unpaid, work during their lunch breaks.

44.     At the end of each shift, Plaintiff and all other CSRs were required to log-out of Defendants' computer programs, software programs, servers, and applications. The log-out process took substantial time on a daily basis with said time ranging from 2 to 3 minutes per day.

45.     Defendants required Plaintiff and other CSRs to "clock out" *prior* to logging out of the computer programs, software programs, servers, and applications, meaning that Plaintiff

and other CSRs worked at least 2 to 3 minutes each per shift that they were never compensated for. This off-the-clock time that Defendants' CSRs spent logging out of each session directly benefitted Defendants and this process was an essential part of their job responsibilities as CSRs.

46. Between the pre-shift start-up/log-in process, the lunch period log-in and log-out process, and the post-shift log-out process, Defendants failed to pay Plaintiff and other CSRs an amount equal to at least 24 to 33 minutes of compensable time per shift. Additionally, Defendants failed to compensate Plaintiff and other CSRs for off-the-clock time spent performing work duties during their lunch breaks.

47. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/ specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

48. Defendants knew or could have easily determined how long it took for the CSRs working at their call centers to complete the pre-shift start-up/log-in process, the post-shift computer log-out process, and the lunch break work duties, and Defendants could have properly compensated Plaintiff and other CSRs for the work that they performed, but did not.

49. As an example of one particular workweek where Defendants failed to pay Plaintiff Nicole Kraus overtime for hours worked in excess of 40 hours (as mandated by the FLSA and PMWA), during the week of October 30, 2017 to November 12, 2017:

> ➢ Plaintiff was paid for 80 hours of regular time and 11.82 hours of overtime. *See **Exhibit B***.

> ➢ With pre-, mid-, and post-shift time of 24 to 33 minutes per shift, Plaintiff should have been paid an additional 240 to 330 minutes of overtime compensation for this two overtime workweek period.

50.     As another example of one particular workweek where Defendants failed to pay Plaintiff Nicole Kraus overtime for hours worked in excess of 40 hours (as mandated by the FLSA and PMWA), during the week of June 11, 2018 to June 24, 2018:

> ➢ Plaintiff was paid for 56.68 hours of regular time and 4.75 hours of overtime.   *See **Exhibit C***.

> ➢ With pre-, mid-, and post-shift time of 24 to 33 minutes per shift, Plaintiff should have been paid an additional 120 to 165 minutes of overtime compensation for this single overtime workweek.

51.     At all relevant times, Defendants were jointly Plaintiff's "employer" and Defendants directed and directly benefited from the work performed by Plaintiff and other CSRs during the pre-shift start-up/log-in process, during the post-shift log-out process, in connection with mid-shift off-the-clock technical issues, and during their meal breaks.

52.     At all relevant times, Defendants controlled Plaintiff's and other CSRs' schedule, duties, protocols, applications, assignments, and employment conditions.

53.     At all relevant times, Defendants were able to track the amount of time that Plaintiff and the putative Class spent in connection with the pre-shift, lunch break, and post-shift activities; however, Defendants failed to document, track, or pay Plaintiff and other CSRs for the work they performed in connection with each shift.

54.     At all relevant times, Plaintiff and all other CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

55.     At all relevant times, Defendants used their attendance and adherence policies against the CSRs in order to pressure them into performing the off-the-clock work described

above.

56.     At all relevant times, Defendants' policies and practices deprived Plaintiff and other CSRs of wages owed for off-the-clock work Plaintiff and other CSRs performed. Because Plaintiff and other CSRs typically worked 40 hours or more in a workweek, Defendants' policies and practices also deprived Plaintiff and other CSRs of overtime pay at a rate of 1.5 times their regular rate of pay, as required under the FLSA.

57.     Defendants knew or should have known that Plaintiff and other CSRs' time spent in connection with the off-the-clock activities set forth herein were compensable under the FLSA and the PMWA.

## COLLECTIVE ACTION ALLEGATIONS

58.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All similarly situated current and former hourly customer service representatives who worked for Defendants at any time during the last three years.*

(hereinafter referred to as the "putative collective members").   Plaintiff reserves the right to amend this definition as necessary.

59.     Plaintiff's FLSA claim should proceed as a collective action because Plaintiff and putative collective members, having worked pursuant to common compensation policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

60.      Plaintiff and putative collective members are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same unlawful practice, policy, or plan; and (c) their claims are based upon the same factual and

legal theories.

61.     The key legal issues are also the same for putative collective members, to wit: whether the off-the-clock time they spend in connection with performing pre-shift, lunch break, and post-shift activities, is compensable under the FLSA.

62.     Plaintiff estimates that the putative collective members, including both current and former employees over the relevant period, will include several thousand members. The precise number of putative collective members should be readily available from a review of Defendant's personnel and payroll records.

## **RULE 23 PENNSYLVANIA CLASS ACTION ALLEGATIONS**

63.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> *All similarly situated current and former hourly customer service representatives who worked for Defendants in Pennsylvania at any time during the last three years.*

(hereinafter referred to as the "Rule 23 Pennsylvania Class"). Plaintiff reserves the right to amend this definition as necessary.

64.     The members of the Rule 23 Pennsylvania Class are so numerous that joinder of all Rule 23 Pennsylvania Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Pennsylvania Class members. Rule 23 Pennsylvania Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

65.     There is a well-defined community of interest among Rule 23 Pennsylvania members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Pennsylvania Class. These common legal and

factual questions, include, but are not limited to, the following:

   a.   Whether the pre-shift time Rule 23 Pennsylvania Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

   b.   Whether the time Rule 23 Pennsylvania Class members spend on work activities during their lunch break is compensable time;

   c.   Whether the post-shift time Rule 23 Pennsylvania Class members spend on log-out activities subsequent to "clocking out" for each shift is compensable time; and

   d.   Whether Defendants' failure to pay the Rule 23 Pennsylvania Class members for this pre-, mid-, and post-shift time resulted in a violation of the overtime requirements established by the PWMA, 43 P.S. § 333.104, *et seq.*

66.     Plaintiff's claims are typical of those of the Rule 23 Pennsylvania Class in that she and all other Rule 23 Pennsylvania Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Pennsylvania Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Pennsylvania Class members.

67.     Plaintiff will fully and adequately protect the interests of the Rule 23 Pennsylvania Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Pennsylvania Class.

68.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Pennsylvania Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their

employer.   Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

69.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendants and their corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

70.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.   *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

71.     Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Pennsylvania Class and declaratory relief is appropriate in this case with respect to the Rule 23 Pennsylvania Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> *All similarly situated current and former hourly customer service representatives who worked for Defendants at any time during the last three years.*

(hereinafter referred to as the "Rule 23 Nationwide Class").   Plaintiff reserves the right to amend this definition as necessary.

73.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical.   Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members.   Rule 23 Nationwide

Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

74.     There is a well-defined community of interest among Rule 23 Nationwide members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a.     Whether the pre-shift time that Rule 23 Nationwide Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

b.     Whether the time that Rule 23 Nationwide Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in, is compensable time;

c.     Whether the post-shift time that Rule 23 Nationwide Class members spend on shut-down/log-out activities after to "clocking out" for each shift is compensable time;

d.     Whether Defendants breached their contracts with Plaintiff and the Rule 24 Nationwide Class members by filing to pay for this pre- and mid-shift time at their agreed upon rate; and

e.     Whether Defendants were unjustly enriched by failing to pay Plaintiff and the Rule 23 Nationwide Class members for this pre- and mid-shift time at their agreed upon rate.

75.     Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices.   Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

76.     Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide

Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

77.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

78.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case, and Defendants have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

79.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.   *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

80.     Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (Alleging Violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*)

81.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further allege as follows.

82.     At all times relevant to this action, Defendants were joint employers under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

83.     Defendants engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

84.     At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

85.     Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

86.     At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

87.     At all times relevant to this action, Defendants required Plaintiff and all similarly situated current and former Class members to perform at least 15 to 21 minutes of pre-shift start-up/log-in activities per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

88.     At all times relevant to this action, Defendants failed to compensate Plaintiff and all similarly situated current and former Class members for off-the-clock, unpaid, work activities they performed during their lunch breaks, which took them between 7 to 9 minutes per shift.

89.     At all times relevant to this action, Defendants required Plaintiff and all similarly situated current and former Class members to perform no less than 2 to 3 minutes of post-shift

logout activities per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

90.     The off-the-clock work performed by Plaintiff and all similarly situated Class members every session is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

91.     In workweeks where Plaintiff and other Class members worked 40 hours or more, the uncompensated off-the-clock time should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage. 29 U.S.C. § 207.

92.     Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have easily determined how long it took for their CSRs perform the off-the-clock pre-shift, lunch break, and post-shift activities, and Defendants could have properly compensated Plaintiff and the Class for the work they performed, but did not.

93.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

### COUNT II
**(Alleging Violations of the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq.*)**

91.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

92.     All members of the Rule 23 Pennsylvania Class are entitled to their regular wages and overtime wages pursuant to the PMWA, 43 P.S. § 333.101, *et seq.*, and the relevant portions of the Pennsylvania Code, 34 Pa. Code § 231.1, *et seq.*

93.     By failing to pay Plaintiff and members of the Rule 23 Pennsylvania Class for all

hours worked in excess of 40 hours a week at one and one-half times their regular rates, Defendants violated the PMWA.   *See*, *e.g.*, 43 P.S. § 333.104(c), 34 Pa. Code § 231.41.

94.     A three-year statute of limitation applies to all above claims.

95.     Defendants violated the PMWA, including by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 Pennsylvania Class for the time spent on the off-the-clock work activities described in this Complaint. As a result, Plaintiff and the Rule 23 Pennsylvania Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff and the Rule 23 Pennsylvania Class are entitled to recover unpaid wages owed, plus costs and reasonable attorneys' fees, and other appropriate relief under Pennsylvania law, including, but not limited to all damages, fees, and costs available under 43 P.S. § 333.101, *et seq*.

## COUNT III
### (Rule 23 Nationwide Class Action)
### Nationwide Breach of Contract

96.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further allege as follows.

97.     At all times relevant to this action, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on Defendants' behalf.

98.     Defendants' contractual promises to pay Plaintiff and each Rule 23 Nationwide Class member's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiff and the Rule 23 Nationwide Class members.

99.     Upon information and belief, each Rule 23 Nationwide Class member, including

Plaintiff, has an hourly rate of between $12.50 and $22.00 per hour.

100.     Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendants' contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendants, and that they performed, in connection with pre-shift and meal period activities, described herein.

101.     By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendants systematically breached their contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

89.     Plaintiff's and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

102.     As a direct and proximate result of Defendants' contractual breaches, Plaintiff and every other member of the Rule 23 Nationwide Class have been damaged in an amount to be determined at trial.

## COUNT IV
### (Rule 23 Nationwide Class Action)
### Unjust Enrichment

103.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

104.     This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

105.     At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the

work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendants.

106.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

107.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

108.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

109.    Defendants received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

110.    Upon information and belief, Defendants used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

111.    Defendants have been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendants' benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

112.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

113.    As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

### RELIEF REQUESTED

WHEREFORE, Plaintiff, Nicole Kraus, requests the following relief:

a.    An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this action as a class action (for the Rule 23 Pennsylvania Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's Pennsylvania state law claims (Count II);

c.    Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

d.    An Order compelling Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA putative collective members and Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e.    An Order designating Plaintiff as the representative of the FLSA collective, the Rule 23 Pennsylvania Class, the Rule 23 Nationwide Class and undersigned counsel as Class counsel for the same;

f.    An Order declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.    An Order declaring Defendants' violation of the FLSA was willful;

h.    An Order declaring Defendants violated the PMWA by failing to properly pay the Pennsylvania Class overtime wages, as set forth herein;

i.    An Order declaring Defendant is in breach of a contract with Plaintiff and the Rule 23 Nationwide Class to pay them at a predetermined agreed upon rate for all hours worked;

j.      An Order declaring Defendant was unjustly enriched by failing to pay Plaintiff and the Rule 23 Nationwide Class for all wages earned;

k.      A Judgment in favor of Plaintiff and against Defendants and awarding Plaintiff and the FLSA Collective, the Rule 23 Pennsylvania Class, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

l.      An award of reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

m.      An award of pre- and post-judgment interest to Plaintiff on these damages; and

n.      An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a jury trial.

Dated:   July 23, 2020

*/s/Jason T. Brown*
Jason T. Brown
Nicholas Conlon
BROWN, LLC
111 Town Square Place, Suite 400
Jersey City, NJ 07310
Phone: (201) 630-0000
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

*Counsel for Plaintiff*

Kevin J. Stoops (*Pending Pro Hac Vice*)
Charles R. Ash, IV *(Pending Pro Hac Vice)*
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
mturner@sommerspc.com
crash@sommerspc.com

*Co-Counsel for Plaintiff*